**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PEANUTS WORLDWIDE LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>　　　　Defendants. | Case No. 21-cv-03525<br><br>**Judge John J. Tharp, Jr.**<br><br>**Magistrate Judge Beth W. Jantz** |

**Declaration of Carrie J. Dumont**

## DECLARATION OF CARRIE J. DUMONT

I, Carrie J. Dumont, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am currently employed as the Senior Vice President of Legal and Business Affairs for Peanuts Worldwide LLC ("Plaintiff"). I am knowledgeable about or have access to business records concerning all aspects of the brand protection operation of Plaintiff, including, but not limited to, its trademarks, copyrights, other intellectual property, sales, on-line sales, advertising, marketing, and media coverage. I make this declaration from matters within my own knowledge save where otherwise stated.

3. Plaintiff Peanuts Worldwide LLC is a Delaware limited liability company having its principal place of business at 352 Park Avenue So. FL 8, New York, NY 10010.

4. Over seventy years ago, Charles M. Schulz introduced a brand-new comic strip with an unlikely round-headed hero, "Good ol' Charlie Brown," and the PEANUTS comic strip was born. From its humble beginnings in just seven U.S. newspapers, the PEANUTS comic strip grew to a syndicated daily and Sunday comic strip that ran from October 2, 1950, to February 13, 2000, and it continues in reruns. The PEANUTS comic strip is not only one of the best-loved comic strips in history, but a true global phenomenon.

5. Some of the characters and character names made famous by the PEANUTS comic strip are:



6. Today, the PEANUTS comic strip is featured in global online syndication and in thousands of newspapers worldwide; in classic television specials and in new streaming series; and in mobile apps, stage productions, feature films, and books. PEANUTS has also inspired theme park attractions and public art projects. In 2018, Plaintiff partnered with NASA on a multi-year Space Act Agreement designed to inspire a passion for space exploration and STEM among the next generation of students with new original streaming series starring Astronaut Snoopy to in-school STEM-based curriculum about America's latest explorations into deep space. For fans everywhere, happiness *is* PEANUTS.

2

7. In addition to DVDs of the classic television specials and PEANUTS comic strips, a variety of licensed PEANUTS products are available, including: games and other toys such as playsets, playing cards, and stuffed toys; household items such as holiday ornaments, bathroom products, stationery and bed linens; clothing and jewelry (collectively, the "PEANUTS Products").

8. PEANUTS Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative design. Among the purchasing public, genuine PEANUTS Products are instantly recognizable as such. The PEANUTS brand has become a global success that resonates with children worldwide, and PEANUTS Products are among the most recognizable in the world. PEANUTS Products are distributed and sold to consumers through retailers throughout the United States, including Illinois. For example, PEANUTS Products are sold through the official PEANUTS brand store on Amazon and the Peanuts.store webstore. PEANUTS has also launched new content on Apple TV+ to continue to bring the magic of PEANUTS to future generations. A true and correct copy of excerpts of the official PEANUTS Amazon store and the Peanuts.store webstore are attached as **Exhibit 1**.

9. Long before Defendants' acts described herein, Plaintiff (through its predecessor-in-interest United Feature Syndicate Inc. and licensees) launched the PEANUTS comic strip and television show and its related line of PEANUTS Products bearing its famous PEANUTS mark, SNOOPY mark, CHARLIE BROWN mark, and various copyrighted designs (the "Peanuts Copyrighted Designs").

10. Plaintiff (through its predecessor-in-interest United Feature Syndicate Inc. and licensees) has used the PEANUTS and other trademarks for many years and has continuously sold

products under PEANUTS and other trademarks (collectively, the "PEANUTS Trademarks"). As a result of this long-standing use, strong common law trademark rights have amassed in the PEANUTS Trademarks. Plaintiff's use of the marks has also built substantial goodwill in and to the PEANUTS Trademarks. The PEANUTS Trademarks are famous marks and valuable assets of Plaintiff. PEANUTS Products typically include at least one of the registered PEANUTS Trademarks and/or the Peanuts Copyrighted Designs.

11. Several of the PEANUTS Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 1,255,304 | PEANUTS | For: address books; books (including coloring books); datebooks; greeting cards; growth charts made of paper; invitations; memo pads; nametags made of paper; paintbrushes; paper napkins; pencils; pencil boxes and cases; place cards made of paper; playing cards; telephone list books; wrapping paper for gifts; writing paper and envelopes; and writing tablets in class 016. |
| 1,265,839 | PEANUTS | For: Christmas decorations and ornaments; dolls; playsets; puzzles in class 028. |
| 1,301,542 | PEANUTS | For: music boxes in class 015. |
| 1,729,501 | PEANUTS | For: clothing; namely, infant boys' and girls' creepers, leggings, shorts, jackets, tops, boys' tops, shorts, tank tops, fleece tops, pants, pajamas, jackets, shorts, and socks; girls' shorts, tops, creepers, jumpers, socks and hosiery in class 025. |
| 1,970,335 | PEANUTS | For: bed linen, namely bedspreads, blankets, comforters, pillowcases, pillow shams, and sheets in class 024. |
| 4,017,645 | PEANUTS | For: pre-recorded DVDs featuring animated characters; pre-recorded CDs featured animated character voices; films featuring animated characters; computer game programs, computer game software, video games, namely, video game software, video game cartridges and video game discs; downloadable television shows featuring animated characters in class 009. |

4

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| | | For: continuing animated programs distributed over television, satellite, audio, video media, the internet and worldwide web in class 041. |
| 4,429,043 | PEANUTS | For: motion picture films featuring animated cartoons; downloadable motion pictures featuring animated cartoons; downloadable music in class 009. |
| 5,023,666 | PEANUTS | For: porcelain commemorative plates in class 021. |
| 5,392,411 | PEANUTS | For: bags, namely, purses, tote bags, backpacks, book bags, school bags, diaper bags, duffel bags, messenger bags, overnight bags, sling bags, luggage, luggage tags, travels bags and garment bags for travel, cosmetic bags sold empty, toiletry bags sold empty, cinch sacks in the nature of drawstring bags used as backpacks, wristlet bags, wallets, change purses, leather and imitation leather key chains, umbrellas; pet clothing; pet accessories, namely, leashes, collars in class 018. |
| 1,254,632 | SNOOPY | For: games and toys; ornaments and decorations for Christmas trees in class 028. |
| 1,256,819 | SNOOPY | For: jewelry, watches, and clocks in class 014. |
| 1,256,900 | SNOOPY | For: luggage and totebags in class 018. |
| 1,256,970 | SNOOPY | For: athletic jerseys, aprons, bibs, coats, footwear, gloves, hats, jackets, jogging suits, mittens, nightgowns, nightshirts, pajamas, t-shirts, tank tops, shorts, socks, sweatshirts, and underwear in class 025. |
| 1,267,166 | SNOOPY | For: picture frames in class 020. |
| 1,268,857 | SNOOPY | For: adhesive bandages in class 005. |
| 1,286,055 | SNOOPY | For: drinking glasses, glass mugs, ceramic mugs, decorative ceramic storage containers for miscellaneous items, and toothbrushes in class 021. |
| 1,300,520 | SNOOPY | For: books, writing paper and envelopes, paint brushes, playing cards, printed instructional and teaching materials, crayons, felt-tip markers, pencils, erasers, paper lunchbags, calendars, drawing paper and tablets, and memo pads in class 016. |

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 2,492,720 | SNOOPY | For: gummy candies in class 030. |
| 4,145,986 | SNOOPY | For: pre-recorded DVDs, pre-recorded CDs, motion picture films for television featuring animated characters; computer game programs; computer game software; video game programs; video game discs; and video game software in class 009. |
| 5,218,767 | SNOOPY | For: motion picture films featuring children's entertainment; downloadable motion pictures featuring children's entertainment in class 009. |
| 5,214,344 | CHARLIE BROWN | For: motion picture films featuring animated cartoons; downloadable motion pictures featuring animated cartoons; downloadable music, ringtones and electronic games via the internet and wireless devices in class 009. |

12. The above U.S. registrations for the PEANUTS Trademarks are valid, subsisting, and in full force and effect, many are incontestable pursuant to 15 U.S.C. § 1065. True and correct copies of the federal trademark registration certificates for the above PEANUTS Trademarks are attached hereto as **Exhibit 2**.

13. The PEANUTS Trademarks are distinctive when applied to the PEANUTS Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products itself or contracts with others to do so, Plaintiff has ensured that products bearing the PEANUTS Trademarks are manufactured to the highest quality standards.

14. The PEANUTS Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned. The innovative marketing and product designs of the PEANUTS Products have enabled the PEANUTS brand to achieve widespread recognition and fame and have made the PEANUTS Trademarks some of the most well-known marks in the toy and children's entertainment

industries. The widespread fame, outstanding reputation, and significant goodwill associated with the PEANUTS brand have made the PEANUTS Trademarks valuable assets of Plaintiff.

15. Plaintiff has expended substantial time, money, and other resources in advertising and promoting the PEANUTS Trademarks. In fact, Plaintiff has expended millions of dollars in advertising, promoting and marketing featuring the PEANUTS Trademarks. PEANUTS Products have also been the subject of extensive unsolicited publicity resulting from their fame and high-quality, innovative designs. As a result, products bearing the PEANUTS Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. PEANUTS Products have become among the most popular of their kind in the U.S. and the world. The PEANUTS Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the PEANUTS Trademarks is of incalculable and inestimable value to Plaintiff.

16. Genuine PEANUTS Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the PEANUTS brand.

17. Plaintiff has registered its Peanuts Copyrighted Designs with the United States Copyright Office. The registrations include, but are not limited to: "Peanuts" (U.S. Copyright Registration No. B 197-759), issued by the Register of Copyrights on February 18, 1977 and renewed as RE 723-431 on February 20, 1996; "Peanuts; sculpture. By Determined Productions, Inc." (U.S. Copyright Registration No. GP 59-162), issued by the Register of Copyrights on January 12, 1968 and renewed as RE 753-956 on April 8, 1997; and "Colorful World of Snoopy, Linus, Schroeder, Lucy and Charlie Brown" (U.S. Copyright

Registration No. A 95-985), issued by the Register of Copyrights on October 1, 1968 and renewed as RE 738-848 on November 21, 1996. A true and correct copy of the record from the U.S. Copyright Office website for the above-referenced Peanuts Copyrighted Designs is attached hereto as **Exhibit 3**.

18. The success of the PEANUTS brand has resulted in its significant counterfeiting. Consequently, Plaintiff has a worldwide brand protection program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified numerous fully interactive e-commerce stores, including those[1] operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases"), which were offering for sale and selling unauthorized and unlicensed products using infringing and counterfeit versions of Plaintiff's federally registered PEANUTS Trademarks and/or unauthorized copies of Plaintiff's federally registered Peanuts Copyrighted Designs (collectively, the "Unauthorized Peanuts Products") to consumers in this Judicial District and throughout the United States.

19. I perform, supervise, and/or direct investigations related to Internet-based infringement of the PEANUTS Trademarks and the Peanuts Copyrighted Designs. Our investigation shows that Defendants are using the Seller Aliases to sell Unauthorized Peanuts Products from foreign countries such as China to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the e-commerce stores operating under the Seller Aliases and determined that Unauthorized Peanuts Products were being offered for sale to residents of the United States, including Illinois residents. This conclusion was

---

[1] The e-commerce store urls are listed on Schedule A to the Complaint under the Online Marketplaces.

8

reached through visual inspection of the products listed for sale on each e-commerce store, the substandard quality of the artwork used in the Authorized Peanuts Products, the price at which the Unauthorized Peanuts Products were offered for sale, other features commonly associated with e-commerce stores selling counterfeit products, and because Defendants and their e-commerce stores do not conduct business with Plaintiff and do not have the right or authority to use the PEANUTS Trademarks or copy the Peanuts Copyrighted Designs for any reason. In addition, each e-commerce store offered shipping to the United States, including Illinois. True and correct copies of screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 4**.

20. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Unauthorized Peanuts Products to residents of Illinois.

21. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of the PEANUTS Trademarks or copy or distribute the

9

Peanuts Copyrighted Designs, and none of the Defendants are authorized retailers of genuine PEANUTS Products.

22. Many Defendants also deceive unknowing consumers by using the PEANUTS Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for PEANUTS Products. Other e-commerce stores operating under Seller Aliases omit using the PEANUTS Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for PEANUTS Products.

23. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

24. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Peanuts Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

25. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features

such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Peanuts Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Unauthorized Peanuts Products were manufactured by and come from a common source and that Defendants are interrelated.

26. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

27. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.

28. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Peanuts Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use the PEANUTS Trademarks and/or copies of the Peanuts Copyrighted Designs in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Peanuts Products into the United States and Illinois over the Internet.

29. Monetary damages alone cannot adequately compensate Plaintiff for ongoing infringement because monetary damages fail to address the loss of control of and damage to Plaintiff's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to completely ascertain due to the inability to fully quantify the monetary damage caused to Plaintiff's reputation and goodwill by acts of infringement.

30. Plaintiff's goodwill and reputation are irreparably damaged when the PEANUTS Trademarks are used in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Plaintiff. Plaintiff's goodwill and reputation are also irreparably damaged when the Peanuts Copyrighted Designs are reproduced, distributed, and displayed to the public without its permission. Moreover, consumer brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

31. Plaintiff is further irreparably harmed by the unauthorized use of the PEANUTS Trademarks and Peanuts Copyrighted Designs because counterfeiters take away Plaintiff's ability to control the nature and quality of the Unauthorized Peanuts Products. Loss of quality control over goods offered for sale or sold under the PEANUTS Trademarks or that copy the Peanuts Copyrighted Designs and, in turn, loss of control over Plaintiff's reputation is neither calculable nor precisely compensable.

32. The use of the PEANUTS Trademarks in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Plaintiff is likely causing and will continue to cause consumer confusion, which weakens Plaintiff's brand recognition and reputation. Consumers who mistakenly believe that the Unauthorized Peanuts Products he

or she has purchased originated from Plaintiff will come to believe that Plaintiff offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine Peanuts Products, resulting in a loss or undermining of Plaintiff's reputation and goodwill. Indeed, there is damage to Plaintiff's reputation and goodwill even if a consumer knows that the goods he or she is purchasing are counterfeit. Prospective consumers who see inferior Unauthorized Peanuts Products worn or used by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Plaintiff and the PEANUTS Trademarks. Such post-sale confusion results in damage to Plaintiff's reputation and correlates to a loss of unquantifiable future sales.

33. Plaintiff is further irreparably damaged due to a loss of exclusivity. The Peanuts Products are meant to be exclusive. Plaintiff's extensive marketing efforts and distribution of Peanuts Products are aimed at growing and sustaining sales of Peanuts Products. The PEANUTS Trademarks are distinctive and signify to consumers that the products originate from Plaintiff and are manufactured to Plaintiff's high quality standards. When counterfeiters use the PEANUTS Trademarks to offer for sale or sell goods without Plaintiff's authorization, the exclusivity of Plaintiff's products, as well as Plaintiff's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

34. Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this the 30th day of June 2021 at South Bend, Indiana.

*Carrie J. Dumont*
Carrie J. Dumont

14